WILLIAM H. BROWN *et al.*, Plaintiffs, v. JACOB NICKLES *et al.*, Defendants; WALTER F. WARREN, Interpleader, Appellant; JOHN T. NICKLES, Interpleader, Respondent.

St. Louis Court of Appeals, December 7, 1897.

Practice, Appellate: EQUITY PROCEEDING: ISSUE: EVIDENCE: FINDING. On appeal, in an equity proceeding, from a finding on an issue of fact, where a strong *prima facie* case is made out by respondent, and the countervailing evidence is not clear and convincing, the appellate court will defer to the judgment of the chancellor, who had the witnesses before him, and a better opportunity to judge of their credibility and the weight of their testimony.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Clopton & Trembley* for appellant.

The court erred in refusing to allow appellant to show what the profits of the partnership business were. It also erred in refusing to allow him to show the amount still owing to employees of the firm. Each partner has a lien on the partnership assets for the payment of partnership debts, for his net share of the assets, and for advancements for the use of the firm. *Tennant v. McKean*, 46 Mo. App. 486; *Reyburn v. Mitchell*, 106 Mo. 365; *In re Edwards Estate*, 122 *Id.* 426; *McDonald v. Cash*, 57 Mo. App. 536.

*Charles Fensky* and *Victor Sarner* for respondent.

Parol evidence, to establish a trust, must be clear, strong and unequivocal, and so definite and positive as to leave no room for a reasonable doubt in the mind of the chancellor as to the existence of the trust. *Roberts v. Walker*, 101 Mo. 597; *Lewis v. Zeigler*, 105 *Id.* 604; *Taylor v. Van Schrader*, 107 *Id.* 206; *King v. Isley*, 116 *Id.* 155; *Bradley v. Bradley*, 119 *Id.* 58; *McFarlane v. La Force, Id.* 585; *Brewing Co. v. Dold*, 45 Mo. App. 603; *Darlington v. Potts*, 118 Mo. 506. This court will defer to the finding of the chancellor, when the evidence is of such character as to be more readily understood, on account of the superior advantages he possesses for weighing the evidence and judging of the credibility of the witnesses. *Parker v. Roberts*, 116 Mo. 657; *Doler v. McCabe*, 52 Mo. App. 532; *Blount v. Spratt*, 113 Mo. 48; *Cobb v. Day*, 106 *Id.* 278. See, also, *Jamison v. Baggot*, 106 Mo. 240;

*Roberts v. Herreyford*, 54 Mo. App. 365; *Clark v. Bank*, 57 *Id*. 277.

BIGGS, J.—On the second day of September, 1896, the plaintiffs were indebted in the sum of $1,059.52 for hauling coal under certain contracts. A part of the coal was hauled to station "A" of the Laclede Gas Light Company, and the remainder to station "B" of the same company. The contract for hauling the coal to station "A" was in writing. It was signed by the plaintiffs and the respondent as the contracting parties. The contract for the coal to be delivered at station "B" was oral and was entered into by the same parties. Some time after the completion of the work the appellant claimed that the contracts were made in the name of the respondent for the use and benefit of Warren & Nickles, a firm composed of himself and Jacob Nickles. He notified the plaintiffs of his claim, and forbade the payment of the money to respondent. The respondent also claimed the money and demanded its payment to him. Under these circumstances the plaintiffs filed a bill of interpleader. They deposited the money in court, and asked that the appellant, the respondent, Jacob Nickles, and N. W. Warren (who was supposed to have some claim to the money) be notified of the suit and be required to interplead for the money. W. M. Warren made default. Jacob Nickles disclaimed any interest in the money. The respondent filed an interplea, in which he claimed to be the sole owner of the money under his contracts with plaintiffs. The appellant in his interplea claimed the money as above set forth. Upon the trial the issues were found for the respondent and a decree was entered accordingly.

The interplea of the appellant is quite lengthy and contains much irrelevant matter. Only two material

PRACTICE, appel-
late: equity pro-
ceeding: issue:
evidence: find-
ing.

questions were presented. *First.* Was there a partnership between the appellant and Jacob Nickles? *Second.* Did the respondent enter into the contracts for the use and benefit of W. F. Warren and Jacob Nickles, and did they do the work? Several propositions which the appellant presents in his briefs and which he attempted to support by evidence on the trial are outside of the issues. Thus the evidence which was offered by appellant as tending to show that subsequently to the contracts in question Jacob Nickles and he were partners in another contract for the delivery of coal in Carondelet, was irrelevant. It pertained to an independent and collateral matter.

The appellant also insisted that the condition of the accounts of the alleged partnership between himself and Jacob Nickles should be inquired into, to the end that his portion of the profits might be ascertained and ordered paid to him out of the money deposited by the plaintiffs. This was unnecessary. If the court had found that the money belonged to the alleged firm, it would have ordered the entire amount to be paid to appellant. It would in such an event have been entirely outside of the case for the court to have attempted to make a settlement between appellant and Jacob Nickles, especially as the latter denied the partnership and disclaimed any interest in the money.

It is admitted that both contracts were entered into in the name of the respondent. It is conceded that this made a *prima facie* case for him. Was the evidence sufficient to overthrow it? The trial judge did not think so. In reviewing the case we must defer greatly to his judgment, because he had the witnesses before him. This gave him the better opportunity of judging of their credibility and the weight to be given to their testimony.

It is not practicable for us to discuss in detail the mass of testimony found in the record. We can only give a synopsis of it. The plaintiffs are eastern coal dealers. Marshall W. Warren, a brother of the appellant, is their agent in St. Louis for the sale and delivery of coal. In the spring of 1896 the plaintiffs had a contract with the Laclede Gas Light Company as above set forth. Warren, as such agent, signed the first contract in conjunction with respondent as the other contracting party. The respondent agreed to haul the coal from the barge to station "A" for sixty cents per hundred bushels. Subsequently he made an oral contract with respondent for hauling the balance of the coal to station "B" for ninety cents per hundred bushels. The appellant testified that he and Jacob Nickles were partners and that these contracts were made with the plaintiffs for their use and benefit; that they were made in the name of John T. Nickles at the suggestion of Jacob Nickles, and that the reason assigned for this was that he (Jacob) did not want to incur personal liability for any accidents which might occur in the prosecution of the work. Appellant also stated that in pursuance of this suggestion the contract was prepared in plaintiff's office, was there signed by John T. Nickles, and that afterward M. W. Warren handed it to him to deliver to John T., which he did. The fact that the appellant delivered the contract to respondent tends somewhat to weaken his testimony. If the contract was for the benefit of appellant and Jacob Nickles, and John T. Nickles was a mere figure-head in the business, wherein was there any necessity of a delivery of the contract to the latter? Other admissions made by the appellant also have a tendency to discredit his testimony on the main proposition. He stated that during the progress of the work the plaintiffs made weekly payments amounting to about

$3,000; that in the outstart it was agreed between him and Jacob Nickles that the profits under the contracts should be delivered at the end of each week; that he received no part of the weekly payments, and made no demand for his part of the profits until about a month after the last coal was hauled. Again, he admitted that he said nothing to the respondent either before the contracts were entered into or during the progress of the work as to the alleged trusteeship. He permitted the entire business of two large contracts to be conducted in the name of respondent, and at no time reminded the latter of the alleged trust, although he saw him almost daily. Marshall W. Warren testified that all negotiations for hauling the coal were between him and Jacob Nickles; that the latter dealt for himself and Walter F. Warren, and that the contracts were made in the name of the respondent at the request of Jacob Nickles, and for the reason stated by Walter F. The force of the testimony of this witness is in a measure broken by proof of his declarations that the respondent was the real contractor, and that during the progress of the work he refused to pay money except to respondent himself or upon his order. There was some other testimony tending to prove that prior to the execution of the contract Jacob Nickles was in the plaintiffs office and was talking with Marshall W. Warren about hauling the coal, but we do not think it necessary to set it forth.

On the other hand, John T. Nickles swears that the appellant and Jacob Nickles had no interest in the contracts, and that he (respondent) prosecuted the work for his own benefit. His testimony is somewhat weakened by the fact that during the time the coal was being delivered at station "A" he was employed by plaintiffs in the delivery of coal at the city of Hannibal. He claimed that he left Jacob Nickles in charge

of the work in St. Louis, and that he paid him a salary of $20 per week.  Jacob Nickles flatly contradicted the testimony of M. W. Warren and W. F. Warren in reference to the making of the contracts.  He asserted that he had no interest in the contracts or work except as an employee of the respondent.  This latter statement is to an extent discredited by the fact that the name of the witness does not appear upon the time book or pay roll as an employee.  There was other proof which had some tendency to sustain the interplea of the respondent, but we do not deem it necessary to refer to it in detail.  The positive testimony bearing on the issues has been set forth, and from it we think it clear that we ought not to disturb the judgment.  The *prima facie* case of the respondent is a strong one.  It rests on the written contract and it ought not to be overthrown, unless the countervailing evidence is clear and convincing.  In our opinion it falls short of this.  Therefore the judgment of the circuit court will be affirmed.  All concur.